448 So.2d 156 (1984)
STATE of Louisiana
v.
Lance OLIVER.
No. 83-KA-636.
Court of Appeal of Louisiana, Fifth Circuit.
March 13, 1984.
*157 Paul Connick, William C. Credo, III, Asst. Dist. Attys., Gretna, for plaintiff/appellee.
Joseph Montgomery, Staff Appeals Counsel, 24th Judicial Dist. Indigent Defender Bd., Gretna, for defendant/appellant.
Before BOWES, GRISBAUM and DUFRESNE, JJ.
BOWES, Judge.
Defendant, Lance Oliver, appeals his conviction and sentence on the charge of possession of a controlled dangerous substance [LSA R.S. 40:967(C)]. We affirm both the conviction and the sentence.
The defendant, Lance Oliver, along with a co-defendant, Ron McCord, was charged by Bill of Information with one count of possession of amphetamines and one count of possession of cocaine, both violations of LSA-R.S. 40:967(C). Pursuant to negotiations with the State, the Bill of Information was amended to a charge of one count of possession of pentazocine. The defendant entered a plea of guilty to this charge reserving his right to seek appellate review of the trial court's denial of his Motion to Suppress, pursuant to State v. Crosby, 338 So.2d 584 (La.1976). Consistent with the plea bargain agreement, the defendant, Oliver, was sentenced to serve one year in the Jefferson Parish Correctional Center. Execution of this sentence was suspended and Oliver was placed on active probation for a term of one year. As a special condition of probation, he was ordered to pay a fine of $1,000.00 and court costs in the amount of $110.00 on or before August 11, 1983.
About 4:10 p.m., on the afternoon of August 24, 1982, two officers from the Gretna Police Department were dispatched to 325 Weyer Street, Gretna, La., in response to a citizen's call concerning a drug violation in progress.
As the first officer, Patricia Rome, arrived at the location, she was met in the parking lot of the small apartment complex by an unidentified complainant who informed Officer Rome that two men were in a camper "shooting up ... right now" (R. p. 43) and directed her to a camper mounted on the back of a pick-up truck. As Officer Rome was conducting her brief interview with the complainant, Officer Henry Levenson arrived on the scene. Together they approached the camper and knocked on the door. Lance Oliver responded to the knock and stepped out onto the tailgate, leaving the door wide open behind him. Both officers glanced inside the camper and observed the co-defendant with a handful of syringes, trying to place them under the seat. Two additional syringes were on the table in front of him, along with a coffee cup containing a substance later identified as a controlled dangerous substance. The officers then entered the camper, seized the syringes and cup, and arrested the subjects.
At the hearing on the Motion to Suppress, the defendant asserted that he had exited the camper before he was arrested and it was only after detaining him that the officers entered and searched the camper for contraband.
*158 The defendant now appeals, arguing a single assignment of error. A second assignment was not argued in appellant's brief and is, therefore, considered abandoned.

ASSIGNMENT OF ERROR NUMBER 1
The trial judge committed reversible error in failing to grant defendant's motion to suppress, which failure violated C.Cr.P. art. 703 and Article 1, Section 5 of the Louisiana Constitution.
Two versions of the defendant's arrest and the seizure of the controlled substance were presented at the suppression hearing. From the articulated reasons of the trial court in denying the defense motion, it is apparent that the trial judge found the narrative of the police officers on the scene more deserving of belief than that of the defendant.
"In reviewing the trial judges' ruling ... his conclusion on credibility are entitled to the respect due those made by one who saw the witnesses and heard them testify." State v. Rodrigue, 409 So.2d 556, 561 (La. 1982).
We fully agree with the astute trial judge. The version of the officers is consistent, logical and believable. The version of the defendant requires one to believe that he was wearing long sleeves in August and that he had, while sleeping, received ant bites "all over my arms, legs, any skin that is exposed when you are sleeping", and that scratching these bites, and not a syringe's needle, caused the blood on his arms. We find this story incredulous.
The appellant asserts in his brief (p. 2) that
[E]ven if the officers [sic] version of what occurred is accepted as true, there is a serious problem in that the officers were acting purely and simply upon the "tip" of the alleged informant, whom neither officer was really able to identify and who apparently had never actually furnished information to the Police Department in Gretna before. There is no question but that the "tip" of this informant would have been insufficient if the officers had attempted to use it as a basis for a search warrant.
At the suppression hearing, Officer Patricia Rome conceded that, at the time she knocked on the door of the camper, she had no probable cause to either arrest the occupants or search the "vehicle".
The testimony of both officers established that their only purpose for approaching the premises was to further investigate the complaint of the unidentified citizen-informant who had advised them that she had seen the occupants of the camper "shooting up."
The plain view rule is set forth in State v. Brown, 370 So.2d 525, 527 (La. 1979) as follows: "[w]hen an officer inadvertently observes evidence of a crime from a vantage point that does not intrude upon a protected area or when that protected area is entered with prior justification, there is no violation of the search warrant rule because there has been no `search.'" [citations omitted]
The question posed by the defense is whether the officers were justified in knocking on the door to the defendant's camper so as "to be where they had a right to be" when the controlled dangerous substance was observed, thereby falling within the parameters of the plain view doctrine to legitimate the subsequent seizure.
The defense asserts that "probable cause" is necessary to justify an officer's knock at the door of a residence. Further, counsel argues that the uncorroborated tip of an unidentified, unproven, informant cannot constitute "probable cause" to violate the defendant's right to privacy.
While we agree that the informant's "tip" did not establish probable cause to justify a search, we find such probable cause is not required to knock at the door of a residence. In State v. Sanders, 374 So.2d 1186 (La.1979), the court held:
Knocking at the door violated no right of privacy; that single action by the police did not infringe on defendant's *159 "right to be let alone." It is an almost implicit understanding and custom in this country that, in the absence of signs or warning, a residence may be approached and the occupants summoned to the door by knocking.
Defendant was free to refuse to open the door or to slam it shut once opened. His freedom of movement was never infringed upon and no search or seizure occurred except on the basis of defendant's voluntary actions.
In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), a plurality of the U.S. Supreme Court agreed the "plain view" doctrine permits the warrantless seizure by police of private possessions where three requirements are satisfied:
(1) The police officer must lawfully make an initial intrusion or otherwise be properly in a position from which he can view a particular area.
(2) The officer must discover incriminating evidence inadvertently, which is to say he may not know in advance the location of certain evidence and intend to seize it, relying on the plain view doctrine only as a pretext.
(3) It must be "immediately apparent" that the items so observed may be evidence of a crime, contraband or otherwise subject to seizure.
The Supreme Court observed recently in Texas v. Brown, ___ U.S. ___, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502 (1983) that "[w]hile lower courts generally have applied the Coolidge plurality's discussion of "plain view", it has never been expressly adopted by a majority of this Court." The court then held "[w]hile not a binding precedent, as the considered opinion of four Members of this Court, it should obviously be the point of reference for further discussion of the issue." Accordingly, since Coolidge has never been overruled or challenged by another U.S. Supreme Court decision, it is, in our view, the foremost authority to follow at the present time, particularly in the light of the foregoing language in Texas v. Brown.
Considering the applicable caselaw, we are of the opinion there is no dispute as to the presence of the first of the three requirements of the Coolidge case to invoke the "plain view" doctrine. Since the police officers had the same right to knock on the appellant's door as any other member of the general public, their vantage point was lawfully obtained.
Likewise, the second requirement of Coolidge, supra, was fulfilled. Clearly, the officers were unaware of the existence or the location of the contraband within the camper. Additionally, while the informant's tip may have given the officers a generalized expectation that narcotics would be in the camper, they could not have guessed that the occupants of the camper would disclose the contraband to full view in response to a knock at the door.
Regarding the third requirement of Coolidge, appellant urges further that the white substance in the cup was not readily identifiable as contraband so as to be subject to seizure. While the Louisiana Supreme Court has strictly interpreted this requirement (see State v. Pomes, 376 So.2d 133 (La.1979); State v. Meichel, 290 So.2d 878 [La.1974]), the U.S. Supreme Court declared the Coolidge phrase "immediately apparent" an "unhappy choice of words." Texas v. Brown, supra, 103 S.Ct. 1535, 1542 and adopted the application of the rule enunciated in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) to define the items subject to seizure under the plain view doctrine. There, the court held "the seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." [emphasis added]. Payton, supra, 445 U.S. 587, 100 S.Ct. at 1380.
Defining probable cause, the court in Texas v. Brown, supra, ___ U.S. ___, 103 S.Ct. at 1543 held:
As the Court frequently has remarked, probable cause is a flexible, commonsense *160 standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed.2d 543 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). Moreover, our observation in United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), regarding "particularized suspicion," is equally applicable to the probable cause requirement:
"The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the sameand so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."
Taking into account these considerations, and the officers' inadvertent view of the syringes inside the camper, we find that the officers possessed probable cause to believe that the unidentified white substance in the coffee cup on the table contained contraband and thus satisfied the third requirement of Coolidge.
We also find that the intrusion into the camper, preceding the seizure of the legitimately-observed contraband, was justified for the following reasons.
In State v. Melton, 412 So.2d 1065, 1967 (La.1982), the Louisiana Supreme Court, citing Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) as authority, held "[a] law enforcement officer, who has a right to be where he is may seize evidence inadvertently observed. [citations omitted]."
The Supreme Court in Texas v. Brown, supra, 103 S.Ct. at 1540, clarified the issue by stating:
The question whether property in plain view of the police may be seized ... must turn on the legality of the intrusion that enables them to perceive and physically seize the property in question.... We recognized ... the well-settled rule that "objects such as weapons or contraband found in a public place may be seized by the police without a warrant. The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." A different situation is presented, however, when the property in open view is "situated on private premises to which access is not otherwise available for the seizing officer." Id., at 587, 100 S.Ct., at 1380, quoting G.M. Leasing Corp. v. United States, 429 U.S. 338, 354, 97 S.Ct. 619, 629, 50 L.Ed.2d 530 (1977). As these cases indicate, "plain view" provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment.
By footnote, the court explained:
It is important to distinguish "plain view," as used in Coolidge to justify seizure of an object, from an officer's mere observation of an item left in plain view. Whereas the latter generally involves no Fourth Amendment search, see pp. 1541-1542, infra; Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the former generally does implicate the Amendment's limitations upon seizures of personal property. The information obtained as a result of observation of an object in plain sight may be the basis for probable cause or reasonable suspicion of illegal activity. In turn, these levels of suspicion may, in some cases, see, e.g., Terry v. Ohio [392 *161 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 889] supra; United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), justify police conduct affording them access to a particular item.
Texas v. Brown, supra, 103 S.Ct. at 1541, n. 4.
Accordingly, we must determine if the intrusion into the camper and the subsequent seizure of the controlled substance was justified by any of the true "exceptions" to the warrant clause of the Fourth Amendment.
In order to make such a determination, a preliminary decision must be reached as to whether the camper constituted a "vehicle" or a "residence".
From the testimony at the suppression hearing, it was established that while the camper had windows, a door to the outside, and at least a table and sink within, it was not equipped with personal hygiene facilities. The defendant asserted that he was living in the camper in the parking lot of the apartment complex because he had the use of bathroom facilities located therein at the time of his arrest. The deputy stated that "it [the camper] was on top of the pickup." (R. p. 46).
We find that a pickup truck, no matter what additions have been made to it, should be treated as a vehicle and the seizure by the officers justified by the "automobile exception" to the warrant clause. The controlling principles of that doctrine provide that officers are empowered to search a vehicle when two conditions are met, namely (1) there must be probable cause to believe that the vehicle contains contraband or evidence of a crime, and (2) there must be exigent circumstances requiring an immediate search. State v. Chaney, 423 So.2d 1092 (La.1982).
The plain view of the contraband afforded the deputies when the defendant opened the door of the camper constituted sufficient probable cause to justify the subsequent intrusion into the camper. Likewise, exigent circumstances existed, which justified the warrantless seizure of the contraband.
"Exigent circumstances" have been defined as:
(1) [T]he impracticability of obtaining a warrant due to the possibility that the car could be moved either by its occupants, if not arrested, or by someone else. An immediate warrantless search is, therefore, constitutionally permissible when "the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. [citation omitted]
State v. Guzman, 362 So.2d 744, 748 (La. 1978), and State v. Chaney, supra at 1097; and
(2) Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that could cause injury to the officers and the public, and the destruction of the evidence. [emphasis added] [citations omitted]
State v. Hathaway, 411 So.2d 1074, 1079 (La.1982).
At the suppression hearing, Officer Rome testified, "[w]hen the door opened Mr. McCord attempted to hide the evidence from us. There is also directly within arm's reach a sink in the camper. At that time I felt I had no choice but to go inside of the camper." (R. p. 48).
Because there was a legitimate concern that the evidence observed would be destroyed if any delay was incurred, the immediate entry into the vehicle to curtail such destruction was authorized. Because the entry was justified, the ultimate, warrantless, seizure of the items was also proper.
Accordingly, the conviction and the sentence of the defendant are affirmed.
AFFIRMED.