783 So.2d 568 (2001)
STATE of Louisiana
v.
Vashon D. HAYWOOD.
No. 00-KA 1584.
Court of Appeal of Louisiana, Fifth Circuit.
March 28, 2001.
*572 Paul D. Connick, Jr., District Attorney, Churita H. Hansell, Terry M. Boudreaux, (Appellate Counsel), Walter G. Amstutz (Trial Counsel), Assistant District Attorneys, Gretna, LA, Counsel for Appellee, State of Louisiana.
Margaret S. Sollars, Thibodaux, LA, Counsel for Vashon D. Haywood, Defendant-Appellant.
Panel composed of Judges GOTHARD, ROTHSCHILD and SCHOTT, Pro Tempore.
ROTHSCHILD, Judge.
On July 27, 1999, the defendant, Vashon D. Haywood, was charged by bill of information with possession of cocaine, a violation of LSA-R.S. 40:967(C). He pled not guilty to the charge on August 17, 1999 and proceeded to trial on March 21, 2000. Prior to trial, the defendant filed a motion to suppress the evidence and a hearing on the motion was held on the morning of the trial, with the parties submitting the matter based solely on the police report. The trial court denied the motion to suppress. On March 22, 2000, a six-person jury unanimously found the defendant guilty as charged. On May 25, 2000, the defendant was sentenced to five years imprisonment at hard labor.
*573 After the defendant was sentenced, the State filed a multiple offender bill of information alleging that the defendant was a second felony offender based on a prior conviction for possession of stolen property valued at over $500.00. The defendant waived the reading of the multiple bill and denied the allegations contained therein. A multiple bill hearing was held on June 26, 2000, at which time the trial court found the defendant to be a second felony offender. After the defendant waived sentencing delays, the trial court vacated the defendant's original sentence and imposed an enhanced sentence of eight years imprisonment at hard labor. The defendant subsequently filed a motion to reconsider sentence which was heard and denied by the trial court on July 27, 2000. The defendant now appeals his conviction and sentence.

FACTS
On July 3, 1999, at approximately 11:00 a.m., Deputy Randall Fernandez was at the Exxon gas station located at 3501 Airline Drive when he was flagged down by an unidentified black female. The black female advised him that a Spanish man with missing front teeth was in room 14 of the Trade Winds Motel and was in the process of receiving a shipment of cocaine. Based on this tip, Deputy Fernandez and Deputy Senior, who had met Deputy Fernandez at the Exxon station, decided to investigate.
The officers knocked on the door of room 14 and a Spanish man matching the description given by the black female answered the door. While standing in the doorway, Deputy Fernandez immediately observed drug paraphernalia in plain view on a nightstand approximately three feet behind the Spanish man.[1] Deputy Fernandez handcuffed the Spanish man and arrested him for possession of drug paraphernalia.
There was conflicting testimony regarding the next series of events. Deputy Fernandez testified that he saw the shower curtain in the bathroom move as he was handcuffing the Spanish man. According to Deputy Fernandez, he went into the bathroom to investigate and when he pulled the shower curtain back, the defendant jumped out of the shower and attempted to run. After a brief struggle, the defendant was subdued and handcuffed.
Deputy Fernandez testified that while the defendant was in handcuffs, he made movements with his hands toward his right ankle. He could not see what the defendant had near his ankle because he was wearing high-top shoes and blue jeans. Deputy Fernandez patted down the defendant's right leg because he did not know whether he had a weapon, and he felt a cellophane wrapper containing objects in the defendant's sock. He immediately recognized the objects, ten pebble size rocks, as crack cocaine. It was later confirmed that the rocks contained a total of 1.1 grams of cocaine.
The defendant's testimony was contrary to the testimony of Deputy Fernandez. The defendant stated that he was relieving himself in the bathroom when the police arrived. He denied that he had tried to run or that he struggled with the police. He testified that when the police came in, he walked toward them with his hands in the air. He stated that he was told to remove his shoes and that Deputy Senior patted him down and declared him "clear." Thereafter, Deputy Fernandez handcuffed *574 him and laid him on the floor. The defendant maintains that he could not see his shoes during this time because he was lying flat on the floor with his head under the bed and a billy club at his jaw.
The defendant stated that approximately 20 minutes passed from the time the police arrived until the discovery of the cocaine. He denied having cocaine on him, and he claimed that the police were in the process of removing his handcuffs when they reached into his shoe and accused him of having cocaine.
In his first assignment of error, the defendant asserts that the trial court erred by failing to suppress physical evidence gathered as the result of an illegal search and seizure. The defendant first argues that the police were not justified in entering the motel room because they did not have probable cause. He contends that the police could not rely on the informant's tip to conduct an investigatory stop where the reliability of the informant or the information had not been established. The defendant further asserts that there were no exigent circumstances to justify a warrantless entry into the motel room. The defendant also argues that once he was detained, the pat down search for weapons was not valid; therefore, there was no justification to reach into his sock and remove the cellophane packet containing the cocaine.
The trial court is afforded great discretion when ruling on a motion to suppress and its ruling will not be disturbed absent an abuse of that discretion. State v. Spotville, 99-719 (La.App. 5 Cir. 12/21/99), 752 So.2d 244, 248. The State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. State v. Rodriguez, 99-914 (La.App. 5 Cir. 1/25/00), 761 So.2d 14, 17, writ denied, 00-599 (La.4/7/00), 759 So.2d 765. Although the motion to suppress was submitted to the trial court solely on the police report, this Court may consider evidence presented at the motion hearing as well as at trial. State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179, 1182; State v. Taylor, 99-1154 (La.App. 5 Cir. 2/29/00), 757 So.2d 63, 66.
The Fourth Amendment to the United States Constitution and Article 1, Section 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. However, law enforcement officers are authorized by LSA-C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to conduct investigatory stops which allow officers to stop and interrogate a person reasonably suspected of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Gresham, 97-1158 (La.App. 5 Cir. 4/15/98), 712 So.2d 946, 951, writ denied, 98-2259 (La.1/15/99), 736 So.2d 200. Investigatory stops require reasonable suspicion of criminal activity. "Reasonable suspicion" is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference. State v. Belton, supra at 1198.
In the instant case, the first issue is whether the police had the right to knock on the door of the motel room. The defendant argues that the anonymous informant's uncorroborated tip was insufficient to give the police reasonable suspicion to approach the motel room door to conduct an investigatory stop. However, knocking on a door does not constitute an investigatory stop and does not require reasonable suspicion. State v. Sanders, 374 *575 So.2d 1186, 1188 (La.1979); State v. Oliver, 448 So.2d 156, 158 (La.App. 5 Cir.1984).
In State v. Sanders, supra, the police received information from a confidential informant that the defendant was dealing marijuana from his apartment to anyone who asked, "Neil do you have anything for the head?". Based on this information, the police went to the defendant's apartment and knocked on his door. When the defendant answered, the police asked him if he "had anything for the head." The defendant went back into the apartment leaving the door open. He returned with what the police recognized as a marijuana cigarette. The defendant then retreated back into the room and, in plain view of the police, he put five or six clear plastic bags containing marijuana into a larger plastic bag and returned to the door. He was subsequently arrested for distribution of marijuana.
The Louisiana Supreme Court held that there was no investigatory stop when the police knocked on the defendant's door and, therefore, the reliability of the informant did not need to be established. Id. at 1188-1189. In so holding, the Court distinguished between detaining a suspect on the street for purposes of an investigatory stop as authorized by LSA-C.Cr.P. art. 215.1 and knocking on a suspect's door. The Court reasoned that when a suspect is stopped on the street or in a public place, he has no choice but to submit to the authority of the police. Therefore, there is a restriction of the defendant's freedom of movement. However, knocking on a door is an "age old request for permission to speak to the occupant." Id. at 1188. When a door is opened in response to a knock, it is a consent of the occupant to confront the caller, and there is no compulsion, force or coercion involved. The Court further noted that the defendant was free to refuse to open the door or to slam it shut once opened. His freedom of movement was never infringed upon and no search or seizure occurred except on the basis of the defendant's voluntary actions. Id. at 1189.
In State v. Oliver, supra, this Court determined that police officers have the same right to knock on a door as any other member of the general public. In Oliver, police officers were dispatched to defendant's address in response to a citizen's call concerning drug activity. When the first officer arrived, she met with an unidentified complainant who informed her that two men were in a camper "shooting up .... right now." The unidentified complainant then pointed out the camper. Two officers then approached the camper and knocked on the door. The defendant answered the door and the officers observed drug paraphernalia in plain view.
The defendant in Oliver argued that the police were not justified in knocking on the door of the camper because the uncorroborated tip of an unidentified, unproven informant did not constitute probable cause to violate the defendant's right to privacy. Id. at 158. Relying on State v. Sanders, supra, this Court found that probable cause is not required to knock on a door.[2]
The occupant of a motel room is free to refuse to open the door or to slam it shut once opened. The occupant's freedom of movement is not infringed upon by the police merely knocking on the door. In the instant case, the police officers were justified in knocking on the motel room door to investigate a complaint based on an anonymous tip, because reasonable suspicion of criminal activity is not required for the police to knock on a door and *576 knocking on a door does not constitute an investigatory stop.
The next issue is whether the police were justified in entering the motel room. The defendant argues that there were no exigent circumstances that necessitated the police officers' entry into the motel room without a warrant. The defendant maintains that a possible unconfirmed drug delivery does not constitute exigent circumstances.
It is unlawful for an entry of a private premises to take place without a warrant, unless the entry is justified by an exception to the warrant requirement. State v. Hathaway, 411 So.2d 1074, 1078 (La.1982). Probable cause to arrest and exigent circumstances justify intrusion into a protected area and are exceptions to the search warrant requirement. Id. Exigent circumstances include lack of sufficient time to prepare an affidavit or to locate a magistrate and obtain a warrant after probable cause arises, imminent danger of the destruction of evidence, and the possibility of escape. State v. Welch, 449 So.2d 468, 470 (La.1984).
In State v. Jones, 99-972 (La.App. 5 Cir. 2/29/00), 757 So.2d 110, this Court upheld the warrantless entry into the defendant's hotel room where the police observed the defendant through the window cutting crack cocaine. The Court concluded that there was a possibility that the defendant could have destroyed the crack cocaine if there had been a delay in obtaining a warrant. The Court found that the officer's "observation of defendant cutting the cocaine gave him probable cause to arrest defendant and the exigent circumstances surrounding defendant's cutting of the crack cocaine gave the officers the right to enter the hotel room without a warrant." Id. at 114.
In the present case, Deputy Fernandez and Deputy Senior went to the motel to investigate a complaint of drug activity. A man fitting the description given to the officers by the anonymous complainant answered the door. Deputy Fernandez testified that when the door of the motel room was opened, he immediately observed drug paraphernalia in plain view on the nightstand approximately three feet behind the man who answered the door. At that point, Deputy Fernandez had probable cause to arrest the man.
In addition, there were exigent circumstances, because there was a possibility that the suspect could have escaped during the time which would have been required to prepare an affidavit, locate a magistrate, and obtain an arrest warrant and/or search warrant. Furthermore, any delay in obtaining a warrant may have allowed the destruction of the evidence. Therefore, the officers' entry into the motel room was justified by the probable cause to arrest the Spanish man and exigent circumstances.
The next issue is whether the officers had the right to conduct a pat-down search of the defendant and to seize the cocaine from his sock. The defendant argues that the pat-down search was not justified because he was already in handcuffs at the time and, therefore, it was unreasonable for the officers to believe that they were in danger. In addition, the defendant maintains that there was no justification for the police to reach into his sock and remove the cellophane packet after he was detained.
As discussed above, the police can conduct an investigatory detention of a person if they have reasonable cause to believe that the person is involved in criminal activity. The police officers clearly had reasonable suspicion to detain the defendant after he was found hiding in the *577 bathroom of a motel room where drug paraphernalia was discovered. A pat-down search is permitted in connection with a valid investigatory stop when an officer believes that the person with whom he is dealing may be armed and dangerous and the officer can articulate a factual basis for his fear of danger. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; State v. Dereyna, 99-614 (La.App. 5 Cir. 11/10/99), 750 So.2d 215, 222, writ denied, 99-3458 (La.5/26/00), 762 So.2d 1102, cert. denied, ___ U.S. ___, 121 S.Ct. 326, 148 L.Ed.2d 262 (2000).
In State v. Gray, 99-47 (La.App. 5 Cir. 6/1/99), 738 So.2d 668, this Court upheld the seizure of marijuana from the defendant that was discovered during a pat down search for weapons despite the fact that the defendant was in handcuffs prior to the frisk. The defendant was among four males who were stopped by the police for a suspected curfew violation. The officer asked the suspects to place their hands on the car so that he could conduct a weapons search. The defendant continually refused to remove his hands from his pockets and was subsequently handcuffed. While he was handcuffed, the officer conducted a frisk for weapons at which time he discovered a plastic bag containing marijuana in his pocket.
The Court noted that the officer was warranted in handcuffing the defendant prior to the pat down because he reasonably believed that his safety was in danger when the defendant continually refused to remove his hands from his pockets. The Court concluded that placing the defendant in restraints in order to search for a weapon was reasonable.
In the present case, the defendant was handcuffed after he attempted to flee and a brief struggle ensued. Deputy Fernandez testified that the defendant was handcuffed upon his detention due to safety concerns. In particular, Deputy Fernandez testified that he had information that a felony was in progress, the investigation was ongoing, and it was unknown if there were any weapons in the room. The officers' concern for their safety was reasonable in light of the fact that there was a possible drug deal in progress and the defendant had tried to run. If the defendant had not tried to run and if a struggle had not occurred, handcuff restraints may not have been necessary.
It is recognized that there is a close association of weapons and narcotics trafficking. State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, 1050. Even after the defendant was handcuffed, he made obvious movements with his hands toward his right ankle. The defendant was wearing high top shoes and blue jeans which prevented the officers from seeing the defendant's ankle area. Based on the fact that he himself sometimes carried a gun in an ankle holster, Deputy Fernandez believed that the defendant had a weapon. Due to the close association of weapons and narcotics trafficking, it was reasonable for the officer to believe that the defendant was armed. Therefore, it was reasonable for the officer to conduct a pat down for weapons, despite the fact that the defendant was handcuffed. The mere fact that the defendant was restrained does not nullify the danger of the situation.
When an officer is conducting a pat down search, the "plain feel" exception allows the seizure of contraband where the incriminating character of the object is immediately apparent to the officer without any additional form of search or examination to identify it as contraband. Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334, 61 USLW 4544 (1993). During the pat down search in this case, the officer felt a cellophane wrapper with objects that he *578 recognized immediately to be crack cocaine. Therefore, the seizure of the cocaine from the defendant's sock was legal.
In summary, the police officers had the same right as any member of the public to knock on the motel room door. Once the door was answered and the police observed the drug paraphernalia in plain view, the officers had probable cause to arrest the Spanish man. There was a definite risk that the drug paraphernalia could have been destroyed or disposed of if there had been any delay in obtaining a search warrant. Therefore, the police had exigent circumstances allowing them to enter the motel room. Thereafter, the officers had reasonable suspicion to detain the defendant when he attempted to flee during the officers' investigation of drug activity in the motel. In addition to the fact that there is a close association of weapons and narcotics, the defendant's movement toward his right ankle after being detained gave the officer reason to believe that they were in danger which justified a pat down search of the defendant. During the pat down search, the officer felt a cellophane wrapper with objects that he recognized immediately to be crack cocaine. Accordingly, based on the above, the trial court properly denied the defendant's motion to suppress the evidence.
In his second assignment of error, the defendant asserts that the evidence was insufficient to prove that he is a multiple offender. In particular, the defendant argues that the State failed to prove the validity of his prior guilty plea which formed the predicate offense for his multiple offender status. The defendant maintains that the prior guilty plea was defective because he was not advised of the minimum sentence or that his conviction could be used to enhance any further sentence. The defendant further contends that this information pertaining to the full sentencing range of the predicate offense was essential to a knowing and voluntary guilty plea.
To prove that a defendant is an habitual offender, the State must prove that the prior felony was committed and that the defendant is the same person who was convicted of the prior felony. State v. Bailey, 97-302 (La.App. 5 Cir. 4/28/98), 713 So.2d 588, 610, writ denied, 98-1458 (La.10/30/98), 723 So.2d 971. This can be established by various means, such as by expert testimony matching fingerprints of the accused with those in the record of the prior proceeding. Id. In addition, the State must show that the predicate convictions fall within the ten-year cleansing period prescribed by LSA-R.S. 15:529.1(C). Id.
Where the prior conviction is based on a guilty plea and the defendant denies the allegations in the bill of information, the State has the burden of proving the existence of the prior guilty plea and that the defendant was represented by counsel. State v. Shelton, 621 So.2d 769, 779 (La.1993). Once the State meets this burden, the defendant must produce some affirmative evidence of an infringement of his rights or of a procedural irregularity. Id. If the defendant meets this burden, the burden shifts back to the State to prove the constitutionality of the plea. Id. The State can meet this burden by producing 1) a "perfect" transcript of the guilty plea colloquy, or 2) any combination of a guilty plea form, a minute entry, or an "imperfect" transcript. State v. Neal, 00-41 (La. App. 5 Cir. 5/30/00), 762 So.2d 281, 284. A "perfect" transcript is one that reflects a voluntary, informed, and articulated waiver of the three specific rights mentioned in Boykin: the right to trial by jury, the defendant's privilege against self incrimination, and the right to confront accusers. Anything less than a "perfect" transcript, *579 such as a guilty plea form or minute entry, requires the trial judge to weigh the evidence submitted by both sides and determine whether the defendant's Boykin rights were prejudiced. State v. Shelton, supra at 779-780.
The State alleged the defendant to be a second felony offender based on a prior May 4, 1999 guilty plea to possession of stolen property valued over $500.00. The defendant denied the allegations contained in the multiple bill. At the multiple offender hearing, the State presented the testimony of Patricia Adams, an expert in fingerprint analysis. Ms. Adams took a set of fingerprints from the defendant in court prior to the habitual offender hearing. She compared them with a set of fingerprints attached to the bill of information in the predicate offense, case number 99-1549, and concluded that the fingerprints were made by the same person. In addition, the State submitted the bill of information from case number 99-1549 charging the defendant with possession of stolen goods valued over $500.00, the minute entry from case number 99-1549 indicating that the defendant was represented by counsel and that he was advised of his three Boykin rights and waived these rights, and the guilty plea form executed by the defendant in case number 99-1549.
The defendant claims that the guilty plea in the predicate offense was defective on two grounds: 1) he was not informed of the minimum sentence that he could have received, and 2) he was not advised that the conviction could be used to enhance a sentence on a subsequent felony. The defendant bases his argument on the transcript of the guilty plea colloquy which was referred to at the multiple bill hearing. However, the transcript was not introduced into evidence and has not been included in the appellate record. The guilty plea form, which was introduced into evidence, does support the defendant's contention that he was advised of the possible maximum sentence that he could receive, but he was not advised of the minimum sentence. In addition, the guilty plea form does not indicate that the defendant was advised that his conviction could be used to enhance the penalty on subsequent offenses.
The advice of a defendant's sentencing range or the fact that his guilty plea may be used as a basis for filing a future multiple offender bill has never formed a part of the Boykin requirements for the entry of a presumptively valid guilty plea. State v. Anderson, 98-2977 (La.3/19/99), 732 So.2d 517. However, LSA-C.Cr.P. art. 556.1 sets forth certain requirements that must be met before a trial court can accept a guilty plea. When a defendant challenges a prior guilty plea due to a violation of article 556.1, the courts have applied a harmless error analysis. This analysis inquires into whether the defendant's knowledge and comprehension of the full and correct information would have likely affected his willingness to plead guilty. State v. Guzman, 99-1753 (La.5/16/00), 769 So.2d 1158, 1165.
Under LSA-C.Cr.P. art. 556.1(A)(1), before a court can accept a guilty plea, it must first inform the defendant of the "nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law." (Emphasis added). The defendant's predicate offense was the illegal possession of a stolen thing valued over $500.00 for which the sentencing range is "not more than ten years." LSA-R.S. 14:69(B)(1). According to the statute, there is no mandatory minimum sentence for the illegal possession of a stolen thing. Under the plain language of LSA-C.Cr.P. art. 556.1(A)(1), the trial court is not required *580 to advise the defendant of the sentencing range for that offense. Rather, the article requires an advisal of the mandatory minimum penalty only if one exists. Since there was no mandatory minimum sentence for the defendant's predicate offense, the trial court's failure to advise the defendant of the sentencing range did not violate LSA-C.Cr.P. art. 556.1(A)(1).
Under LSA-C.Cr.P. art. 556.1(E), the trial court is required to inform the defendant of the penalties for subsequent offenses where a subsequent offense carries an enhanced penalty. However, advice regarding the penalties for subsequent offenses is not required to be given prior to the acceptance of a guilty plea. State v. Guzman, supra at 1163, 1166.
In Guzman, the Louisiana Supreme Court held that under the plain language of LSA-C.Cr.P. art. 556.1, the trial court's failure to adhere to article 556.1(E) is not reversible error. The Court applied the harmless error rule and concluded that any such error was harmless. Specifically, the Court did not accept the defendant's contention that had he known that a subsequent offense carried a more severe penalty than the first offense, he would not have pled guilty to the first offense. The Court noted that while such information may have and should have affected the defendant's decision to commit a subsequent offense, it could not have been a material factor in his decision to plead guilty to the first offense.
As in Guzman, it is unreasonable to believe that the defendant would not have pled guilty to the predicate offense if he had been advised of the penalties for subsequent offenses. Therefore, the failure of the trial court to advise the defendant of the penalties for subsequent offenses pursuant to LSA-C.Cr.P. art. 556 is harmless.
In the present case, after the defendant denied the allegations in the multiple bill, the State met its burden of proving the existence of the prior guilty plea and that the defendant was represented by counsel. The burden then shifted to the defendant to produce affirmative evidence of an infringement of his rights or of a procedural irregularity. We are not convinced that the defendant has met this burden. However, even if the defendant had shown a procedural irregularity or infringement on his rights, it is clear that the State has established the constitutionality of the plea. The guilty plea form from the predicate offense indicates that the defendant was represented by counsel, that he was advised of and waived his three Boykin rights, that he was advised of the ten-year maximum sentence that he could receive, and that he was advised of the sentence that he would receive if he pled guilty which was a one-year suspended sentence and one year of active probation. Therefore, there was no error in the trial court's determination that the defendant's guilty plea in the predicate offense was constitutionally valid and that it was properly used to prove the defendant's status as a second felony offender. Accordingly, the defendant's second assignment of error is without merit.
In his third assignment of error, the defendant contends that the trial court erred by imposing an unconstitutionally harsh and excessive sentence. The defendant asserts that his sentence is excessive in light of his young age and the fact that he has no history of violent criminal behavior. The defendant further argues that the trial judge failed to comply with LSA-C.Cr.P. art. 894.1 in that she failed to articulate factors that she considered in imposing the sentence.
The defendant was originally sentenced to five years at hard labor for his *581 conviction for possession of cocaine. The defendant was subsequently found to be a second felony offender. As such, the trial court vacated the defendant's original sentence and sentenced him to eight years. The defendant filed a motion to reconsider the sentence, which was denied after a hearing.
LSA-C.Cr.P. art. 881.1 provides that a defendant may file a motion to reconsider the legality, under statutory sentencing guidelines, of a sentence within 30 days of sentencing. The article requires that the motion be made orally at the time of sentencing, or in writing, and that it set forth the specific grounds on which the motion is based. The failure to state the specific grounds on which the motion is based precludes the defendant from raising the issue on appeal. State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 967, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. However, the failure to comply with LSA-C.Cr.P. art. 881.1 does not preclude a review of the defendant's sentence for constitutional excessiveness.
In State v. Battie, 98-1296 (La.App. 5 Cir. 5/19/99), 735 So.2d 844, writ denied, 99-1785 (La.11/24/99), 750 So.2d 980, this Court refused to consider the defendant's assertion that the trial court failed to comply with LSA-C.Cr.P. art. 894.1 by failing to articulate the reasons for the sentence. This Court explained that the defendant did not include the issue of noncompliance with LSA-C.Cr.P. art. 894.1 in her motion to reconsider sentence nor did she argue the issue at the hearing on the motion. Thus, this Court found that the defendant was precluded from raising the issue on appeal. Nonetheless, the Court addressed whether the sentence was constitutionally excessive.
In the present case, defense counsel orally objected to the sentence by stating, "Your honor, with respect, please note our objection for the severity of the sentence." During the hearing on the defendant's motion to reconsider the sentence, defense counsel stated, "I'm respectively [sic] requesting reconsideration by the fact of his age and he has no violent past history; and submit it." After the trial court denied the motion, defense counsel stated, "Respectively [sic] note our objection." At no time, either in his motion for reconsideration or during his oral objections, did the defendant include the issue of the trial court's failure to comply with LSA-C.Cr.P. art. 894.1. Therefore, the defendant failed to preserve this issue for appeal.
Nonetheless, the defendant is entitled to a review of his sentence for constitutional excessiveness. A sentence is constitutionally excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering. State v. Robicheaux, 412 So.2d 1313 (La.1982); State v. Wickem, supra at 968. Trial judges are granted great discretion in imposing sentences, and they will not be set aside as excessive absent clear abuse of that broad discretion. State v. Riche, 608 So.2d 639, 640 (La.App. 5 Cir.1992), writ denied, 613 So.2d 972 (La. 1993).
Three factors are considered in reviewing a trial court's sentencing discretion: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Watts, 99-311, (La.App. 5 Cir. 8/31/99), 746 So.2d 58, 64, writ denied, 99-2733 (La.3/24/00), 758 So.2d 145. The issue on appeal is whether the trial court abused its discretion, not whether another *582 sentence might have been more appropriate. Id. at 64.
The defendant was convicted of possession of cocaine and adjudged to be a second felony offender. Under the habitual offender law, the trial court could have imposed a sentence between two and one-half years and ten years. LSA-R.S. 15:529.1(A)(2)(a); R.S. 40:967(C)(2). The defendant was sentenced to eight years which falls within the upper limits of the sentencing range.
In State v. Joseph, 99-1161 (La.App. 5 Cir. 3/22/00), 759 So.2d 141, the defendant, at age 31, was convicted of possession of cocaine and subsequently adjudged to be a second felony offender. She was sentenced under the habitual offender law to eight years. This Court concluded that the defendant's sentence was not excessive. In so finding, the Court noted that the defendant was found with 22 rocks of crack cocaine and commented on the defendant's poor likelihood to benefit from probation or rehabilitation absent correctional treatment. In particular, the trial court had noted that the defendant had a drug problem and that she had been given the opportunity to address the problem when she received probation for her prior conviction for possession of cocaine. The trial court had reasoned that the defendant had failed to take advantage of the opportunity for rehabilitation and was of the opinion that the defendant was likely to commit further drug-related offenses.
The trial court in the present case did not state any reasons or comment on any factors when it imposed the defendant's sentence. However, the Pre Sentence Investigation report (PSI) indicates that at the time of the offense, the defendant was 22 years old and that he was on active probation for a conviction for possession of stolen goods.[3] He had two prior adult convictions, one for possession of marijuana and one for possession of a stolen automobile, several arrests for possession of cocaine and an arrest for simple battery. The defendant also has a juvenile record for theft. According to the PSI, the defendant admitted to past cocaine and marijuana use.
Clearly, the defendant has had several prior encounters with the law despite his youthful age. He was on probation at the time of his most recent offense, indicating a lack of respect for the law and the legal system. While the defendant received eight years at hard labor, he did not receive the maximum sentence. Considering the record before us, we find that the defendant's sentence is not excessive.
The record was reviewed for errors patent, pursuant to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Three errors were noted.
First, we note as error patent that the trial judge did not advise the defendant of his multiple offender rights, as required by LSA-R.S. 15:529.1, which provides that the trial court shall inform the defendant of the allegations contained in the information and of his right to be tried as to the truth thereof according to law, and shall require the offender to say whether the allegations are true. LSA-R.S. 15:529.1 implicitly requires that the trial court advise the defendant of his right to remain silent. State v. Dearmas, 606 So.2d 567, 569 (La.App. 5 Cir.1992). The trial judge also failed to inform the defendant of this right. In State v. Dearmas, *583 the Court held that the failure of the trial court to advise the defendant of his right to a trial and to remain silent was harmless error where the multiple offender status was established by competent evidence offered by the State at the hearing, rather than by the admission of the defendant. In the instant case, the defendant denied the allegations of the multiple bill, and the State presented competent evidence at the hearing to establish the defendant's multiple offender status. Therefore, the trial court's failure to advise the defendant of the specific allegations against him and of his right to be tried and to remain silent was harmless error.
Second, the enhanced sentence imposed on the defendant based on his multiple offender status was not imposed without benefit of probation or suspension of sentence as mandated by LSA-R.S. 15:529.1(G). However, this Court has held that such an error is harmless where the trial court did not affirmatively suspend any portion of the sentence or impose any probationary period. State v. Francis, 98-811 (La.App. 5 Cir. 1/26/99), 727 So.2d 1235, 1240, writ denied, 99-671 (La.6/25/99), 746 So.2d 597. Since the trial court in this case did not grant probation or suspend any portion of the defendant's sentence, the failure to impose the enhanced sentence without the benefit of probation or suspension of sentence is harmless.
Finally, it is noted that during the original sentencing, the trial court did not properly advise the defendant of the prescriptive period for filing post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8 in that she failed to indicate when the period began to run. Further, when the trial court subsequently vacated the defendant's original sentence and sentenced him as a multiple offender, the trial court did not advise the defendant of the prescriptive period for post-conviction relief. Therefore, we remand to the trial court and order the trial court to send written notice of the proper prescriptive period to the defendant within ten days of the rendition of this opinion and to place proof of such notice in the record.
Accordingly, we affirm the defendant's conviction and sentence, and we remand to the trial court to notify the defendant of the proper prescriptive period for filing post conviction relief.
CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] The drug paraphernalia consisted of two hypodermic needles, syringes, a spoon with white powder residue, a cigarette lighter, and a jar of vinegar which is used to inject cocaine.
[2] In State v. Oliver, this Court did not distinguish between reasonable suspicion to conduct an investigatory stop and probable cause to search.
[3] The PSI was never introduced into evidence, but it was included in the appellate record. It is clear that the trial court reviewed the report and relied on it when sentencing the defendant.