MARC E. JOHNSON, Judge.
|2Pefendant, Terence Pollard, appeals his convictions for armed robbery and felon in possession of a firearm on the basis he was incompetent to stand trial. He also appeals his adjudication as a second felony offender on the basis of insufficient evidence. For the reasons that follow, we affirm.

PROCEDURAL HISTORY

On November 14, 2008, defendant was charged with armed robbery with a firearm in violation of La. R.S. 14:64 and 14:64.3 (Count 1)[1] and attempted first degree murder in violation of La. R.S. 14:30 and 14:27 (Count 2). He pled not guilty and proceeded to trial on September 15, 2009; however, a mistrial was declared after defendant “acted out” in open court in front of the prospective jurors. The next day, a competency hearing was held, after which the trial judge ^ordered that defendant be remanded to the Eastern Louisiana Mental Health System for further observation.
On December 8, 2010, a second competency hearing was held, and the trial judge found defendant competent to stand trial. The case proceeded to trial a second time on February 22, 2011; however, the trial judge declared a mistrial after defendant slit his throat with a razor in open court. The next day, the State dismissed Count 2 of the bill of information.
On April 6, 2011, a third competency hearing was held, after which defendant was found competent to stand trial. Thereafter, the State amended the bill of information to add the charge of felon in *1197 possession of a firearm in violation of La. R.S. 14:95.1. Defendant was re-arraigned on the amended bill and pled not guilty. He again proceeded to trial on August 16, 2011. After a three-day trial, a 12-person jury found defendant guilty as charged on both counts: armed robbery and felon in possession of a firearm. The trial judge sentenced him to 50 years at hard labor for his armed robbery conviction and ten years for his felon in possession of a firearm conviction. Both sentences were imposed without the benefit of parole, probation or suspension of sentence and were ordered to run concurrently with each other.
The State subsequently filed a multiple offender bill of information alleging defendant to be a second felony offender. Defendant denied the allegations in the multiple bill after his motion to quash the multiple bill was denied. A hearing on the multiple bill was held on April 30, 2012, after which the trial court found defendant to be a multiple offender. The trial court then vacated defendant’s |4original sentence on Count 1 and imposed an enhanced sentence of 70 years without benefits. This appeal ensued.[2]

FACTS

At approximately 7:30-7:45 a.m. on October 10, 2008, Lisa Hotard walked outside of her apartment complex located at 4800 Zenith Street in Metairie and put her trash in the dumpster in the parking lot. As she walked towards her car, a young man she later identified as defendant approached her and asked for her purse. Ms. Hotard thought he was joking, and she told him she did not have anything in her purse. He asked her again, and she repeated that she had nothing in her purse. Defendant then pulled out a gun, shoved her to the ground, pulled the trigger, and stuck the gun in her side. Ms. Hotard started yelling at him to get off of her at which time he ran away with her purse.
At approximately the same time, a resident at the apartment complex, Arthur Blackwell, and his girlfriend heard a woman screaming. Mr. Blackwell looked out of his window and saw a man and a woman screaming. He told his girlfriend to call the police, and then he ran out of the door to where he saw a woman lying on the ground and a man with a gun. Mr. Blackwell told the man, whom he later identified as defendant, to leave the woman alone at which time defendant jumped into a small grey car being driven by a woman and left. Mr. Blackwell’s girlfriend also saw defendant and the victim fighting over a purse and saw defendant put a gun to the victim’s side. She further saw defendant leave in a small silver SUV being driven by a female.
[¡Another apartment complex resident, Darnerio Rogers, heard the “commotion.” He spoke to the victim and found out what happened. After getting a physical description of the perpetrator and the vehicle in which he left from the victim, Mr. Rogers got into his vehicle and tried to locate the suspect. He found a vehicle matching the description at a nearby gas station at Transcontinental and Veterans Blvd. Mr. Rogers pulled up beside the vehicle, got out, and pretended like he was getting ready to pump gas. He then noticed a black male, who matched the physical de *1198 scription, standing by the gas pump and a black female in the driver’s seat. Mr. Rogers called the Jefferson’s Parish Sheriffs Office (JPSO) and gave them the license plate number of the vehicle. Meanwhile, the suspects drove off. Mr. Rogers followed them and relayed the direction of the vehicle to the JPSO.
JPSO Officer Stephen Hymel heard a dispatch of the description of the suspects and the vehicle. He saw the vehicle on Transcontinental and activated his lights and sirens to stop the vehicle. The car stopped, but when Officer Hymel ordered defendant to show his hands the vehicle took off. Officer Hymel eventually caught up with the vehicle, but both defendant and the female driver exited the vehicle and fled on foot. Officer Hymel pursued the female, apprehended her, and placed her in his unit.[3] Defendant was subsequently apprehended by another officer after a short chase. The victim was brought to defendant’s location immediately thereafter and made a positive identification of him as the person who robbed her.
The victim’s purse was located on the same day of the incident on the lawn of a house on Haring Road. Co-defendant Lade LeBeauf, who was the driver of 1 fithe get-away car, testified that defendant threw the victim’s belongings out of the window while she was driving. Additionally, a gun was found about one block away from the purse. The victim identified this gun as looking identical to the one defendant used during the robbery.
After defendant’s arrest, he was advised of his rights and indicated he understood and wished to waive them. He then admitted that he committed the robbery, but claimed he did not have a gun during it and explained, “no gun, no crime.” Defendant refused to give a taped statement but acknowledged that he had discussed the robbery with an officer.

DISCUSSION

Mental Competency

Defendant first argues the trial court erred in finding him competent to stand trial considering the entire history of his behavior. He specifically contends he was unable to assist in his defense. He points to a part of the trial where he slumped and fell out of his chair. That night, he tested positive for amphetamines. Defendant maintains this showed he was incapacitated by drugs and was incompetent to proceed with trial.
A criminal defendant has a constitutional right not to be tried while legally incompetent. State v. Carmouche, 01-405 (La.5/14/02), 872 So.2d 1020, 1041. There is a legal presumption that a defendant is sane and competent to proceed to trial. La. R.S. 15:432. Accordingly, the defendant has the burden of proving by a preponderance of the evidence his incapacity to stand trial. State v. Anderson, 06-2987 (La.9/9/08), 996 So.2d 973, 992, cert. denied, — U.S. -, 129 S.Ct. 1906, 173 L.Ed.2d 1057 (2009). A reviewing court owes the trial court’s determination as to a defendant’s mental competency great weight, and the trial court’s ruling will not be disturbed absent a clear abuse of discretion. Id.
17Under La.C.Cr.P. art. 641, “mental incapacity to proceed exists when, as a result of mental disease or defect, a defen- *1199 dant presently lacks the capacity to understand the proceedings against him or to assist in his defense.” The two-fold test of capacity to stand trial is whether the defendant: (1) understands the consequences of the proceedings, and (2) has the ability to assist in his defense by consultation with counsel. State v. Bridgewater, 00-1529 (La.1/15/02), 823 So.2d 877, 892, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003).
A defendant’s mental incapacity to proceed may be raised by the defense, the district attorney, or the court at any time. La.C.Cr.P. art. 642; State v. Johnson, 10-612 (La.App. 5 Cir. 1/25/11), 60 So.3d 653, 657, writ denied, 11-316 (La.6/17/11), 63 So.3d 1038. The trial court is required to order a mental examination of the defendant only when it has a reasonable ground to doubt the defendant’s mental capacity to proceed. La.C.Cr.P. art. 643; State v. Hobley, 98-2460 (La.12/15/99), 752 So.2d 771, 786, cert. denied, 531 U.S. 839, 121 S.Ct. 102, 148 L.Ed.2d 61 (2000). There must be substantial doubt as to mental capacity before refusal to order an examination constitutes an abuse of the trial court’s discretion. Id.
“Reasonable grounds” refers to information which, objectively considered, should reasonably raise a doubt about the defendant’s competency and alert the court to the possibility that the defendant cannot understand the proceedings, appreciate the significance of the proceedings, or rationally aid his attorney in his defense. Anderson, 996 So.2d at 992.
In State v. Bennett, 345 So.2d 1129, 1138 (La.1977), the Louisiana Supreme Court listed the following factors to be considered in determining whether a defendant is able to assist in his defense:
18[W]hether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.
On the day defendant was first scheduled for trial, in September 2009, the trial judge was notified that defendant was on suicide watch. The trial judge held a status hearing and heard testimony from a psychiatric coordinator, who stated defendant would be a danger to others if he was brought to court. Defendant was then questioned and said he would “act out,” but not hurt anyone. The trial judge ordered that defendant be brought back to jail and dressed for trial. When defendant returned to court, he again said he would “act out” during the trial. As jury selection began, defendant “acted out” in court in front of the prospective jurors, and a mistrial was declared. The defense moved for a sanity hearing, and the trial judge ordered that defendant be evaluated the next day.
The next day, Dr. Richard Richoux, an expert forensic psychiatrist, and Dr. Rafael Salcedo, an expert forensic psychologist, conducted a competency examination of defendant. At the competency hearing, Dr. Salcedo testified that they could not opine that defendant met the Bennett criteria because defendant would not answer during the competency part of the evaluation. He also stated they were not persuaded that defendant suffered from a *1200 major psychiatric disease or defect. Dr. Salcedo further testified that it appeared defendant was unwilling, rather than unable, to cooperate in the examination. Dr. Richoux testified that he had no reason to disagree with Dr. Salcedo’s testimony. Based on defendant’s behavior, Drs. Salce-do and Richoux indicated that defendant might be depressed |9due to his current situation, and that he might be trying to manipulate the system to postpone prosecution.
After hearing the testimony of Drs. Ri-choux and Salcedo, the trial judge remanded defendant to the East Feliciana Hospital for observation, which was the court’s practice when there was an inability to make the call regarding a defendant’s competency. Although he noted that it appeared defendant was being manipulative, he indicated it would not hurt for the doctors to look at defendant for a few months and see what effect medications might have on defendant for depression or any other mental illnesses he might have.
Approximately two years later, on December 8, 2010, a second competency hearing was held, during which Dr. Robert Storer, an expert clinical and forensic psychologist, testified regarding his examination and/or treatment of defendant at East Feliciana Hospital. It was his opinion that while defendant had some depressive symptoms, there were no significant impairments in defendant’s competence related abilities and no major mental illness that would provide a foundation for finding incompetence. Dr. Storer opined that defendant met the Bennett criteria. Dr. Storer stated that he was aware of the previous mistrial because of defendant’s behavior and noted that defendant was engaged in nine fights while in the hospital; however, Dr. Storer explained that even though defendant had a difficult time getting along with people, it was not because he did not have the capacity to do so. Dr. Storer testified that defendant had the ability to rationally choose to act or not to act.
Dr. Mark Wilson, a staff psychiatrist at East Feliciana Mental Health System and an expert clinical and forensic psychiatrist, also testified at the competency hearing, and stated he agreed with Dr. Storer’s findings. Dr. Wilson testified that he examined defendant and believed defendant met the Bennett criteria in that he 1 ^understood the proceedings and was capable of assisting in his defense. Dr. Wilson specifically stated defendant was capable of making a rational decision as to whether he wanted to disrupt proceedings. He explained that defendant did not suffer from a mental illness that would force him to disrupt proceedings, but rather it was defendant’s own personal decision whether he engaged in that type of behavior.
The trial judge ultimately found defendant competent to stand trial, and defendant proceeded to trial a second time on February 22, 2011. However, the trial judge declared a mistrial after defendant slit his throat with a razor in open court.
A third competency hearing was held on April 6, 2011. Dr. Salcedo testified that in his and Dr. Richoux’s most recent examination of defendant on March 30, 2011, defendant did not exhibit any signs or symptoms of suffering from a major psychiatric disorder which would render him incompetent or incapable of assisting in his defense. Dr. Salcedo again suggested that defendant might be trying to manipulate the system to avoid going to trial. At the conclusion of the hearing, the trial judge found defendant competent to stand trial.
Defendant’s third trial began on August 16, 2011. Upon agreement of all parties, defendant was handcuffed and shackled, with both connected to a U-bolt in the floor. After the jury entered the court *1201 room during trial, defendant fell from his chair and slumped to the floor. The prosecutor noted on the record that it appeared defendant flung himself from the chair and did not slump out of it. Defense counsel stated he could not object to that analysis, but nevertheless moved for a mistrial. The trial judge denied the motion, stating that he believed defendant was attempting to obtain a mistrial, and that his actions demonstrated defendant understood what he was doing since it was the third occasion.
InThat evening, defendant’s blood was tested. The next day at trial, the prosecutor advised the trial judge that defendant’s blood work was positive for amphetamines. The prosecutor relayed that according to Dr. Richoux, defendant had never been prescribed methamphetamines. Defense counsel noted that defendant told him that he took Trazodone that was not prescribed for him and that he received the medication from someone else.[4] The prosecutor remarked that the doctor had told him defendant did not test positive for that drug.
After reviewing the record, we find the trial judge did not err by finding defendant competent to stand trial. Defendant was evaluated for competency on three occasions, the first of which was a lengthy hospital stay for observation. Drs. Storer, Wilson, Salcedo, and Richoux evaluated defendant on separate occasions and none found defendant mentally incompetent to stand trial.
The trial judge declared a mistrial on two occasions, the first when defendant “acted out” in court, and the second when defendant slit his throat in court. After viewing defendant’s behavior over the course of several court appearances and considering the doctors’ testimony, the trial judge believed that defendant was consciously attempting to obtain a third mistrial by disrupting the proceedings yet again by flinging himself from his chair.
In the instant case, there is nothing in the record to show that the trial judge abused his discretion in finding defendant competent to proceed to trial. The record fully supports the trial judge’s conclusion that defendant was intentionally trying to cause a mistrial by disrupting the proceedings for a third time.

Multiple Offender Adjudication

In his second assignment of error, defendant argues there was insufficient evidence to adjudicate him a multiple offender because the State failed to prove an | ^identifiable link between the fingerprints from the predicate conviction and his underlying conviction.[5]
To prove a defendant is a multiple offender, the State must initially prove the prior felony convictions and that the defendant is the same person who was convicted of the prior felonies. State v. Fleming, 04-1218 (La.App. 5 Cir. 4/26/05), 902 So.2d 451, 455, writ denied, 05-1715 (La.2/10/06), 924 So.2d 161. This Court has held that testimony comparing a defendant’s current fingerprints with fingerprints found on pri- or arrest records is sufficient to prove that *1202 the defendant is the person convicted of a prior felony. State v. Bell, 97-1134 (La.App. 5 Cir. 2/25/98), 709 So.2d 921, 926, writ denied, 98-792 (La.9/16/98), 721 So.2d 477. This Court has also found sufficient linkage to a defendant where the State connects the fingerprint card to the arrest register and/or the bill of information by matching police item numbers, Bureau of Identification numbers, social security numbers, addresses, employers, or docket numbers. State v. Muhammad, 03-419 (La.App. 5 Cir. 6/29/04), 880 So.2d 29, 33, writ denied, 04-2082 (La.1/7/05), 891 So.2d 669.
In the present case, the State alleged defendant to be a second felony offender based on predicate convictions for armed robbery and attempted armed robbery obtained on February 4, 2000 when defendant entered guilty pleas. At the multiple bill hearing, the State introduced the fingerprint card of defendant taken at the trial of his underlying conviction (State’s Exhibit 1); certified documents from the Orleans Parish convictions in case number 405-200, which contained two bills of information, a guilty plea form, a docket master, and arrest registers (State’s Exhibit 2); and the fingerprint card from the 1998 arrest in case number 405-200 | ^(State’s Exhibit 3). Aischa Prudhomme, an expert in the field of fingerprint identification and comparison, testified that the fingerprints contained on State’s Exhibit 1 (the fingerprints she took of defendant on August 17, 2011, at defendant’s current trial) were made by the same person as the fingerprints on State’s Exhibit 3 (fingerprints certified from the New Orleans Police Department).
We find this evidence sufficiently linked defendant to the predicate conviction. Defendant’s fingerprints taken by Ms. Prud-homme (State’s Exhibit 1) link him to the fingerprints contained on the fingerprint card pertaining to the 1998 arrest in New Orleans (State’s Exhibit 3). State’s Exhibit 3, in turn, links defendant to the arrest registers pertaining to the Orleans Parish convictions (State’s Exhibit 2), in that they both contain the same social security numbers, dates of birth, dates of arrest, local identification numbers, gender, race, weight, and eye color. There are only minor differences between State’s Exhibits 2 and 3 regarding height (a one-inch difference), hair color, and spelling of defendant’s first name (Terence in the instant case, but Terence in State’s Exhibit 2). Additionally, the docket master and the guilty plea form show defendant was represented by counsel at the time he entered his pleas.
Because the State met its burden of proving the existence of the prior guilty pleas and that the defendant was represented by counsel at the time he entered his pleas, the burden shifted to defendant to produce affirmative evidence indicating an infringement of his rights or a procedural irregularity in the taking of the plea. The record does not reflect that defendant produced such evidence.
Accordingly, we find the evidence sufficiently proved defendant was a second felony offender.

J¿¿ERRORS PATENT

Defendant requests an error patent review; however, this Court routinely reviews the record for errors patent in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990), regardless of whether a defendant makes such a request.
We first note that the trial court did not specify whether the sentence for the felon in possession of a firearm conviction was to be served at hard labor. Al *1203 though the commitment reflects the sentence was to be served at hard labor, the transcript, which prevails,[6] does not. A court is required to impose a determinate sentence. La.C.Cr.P. art. 879. If the applicable sentencing statutes allow discretion, the failure to indicate whether the sentence was to be served at hard labor would be an impermissible indeterminate sentence. Defendant was sentenced under La. R.S. 14:95.1, which requires the sentence to be served at hard labor. Because the statute mandates hard labor and there is no discretion allowed, the trial court’s-failure to state that defendant’s sentence was to be served at hard labor is harmless and no corrective action is required. See State v. Horton, 09-250 (La.App. 5 Cir. 10/27/09), 28 So.3d 370, 377.
Next, in connection with defendant’s felon in possession of a firearm conviction, the trial judge did not order defendant to pay the mandatory fine of not less than $1,000.00 nor more than $5,000.00 as required by La. R.S. 14:95.1(B). This Court has authority to correct an illegally lenient sentence under La.C.Cr.P. art. 882; however, this authority is permissive rather than mandatory. State v. Gorman, 11-491 (La.App. 5 Cir. 2/14/12), 88 So.3d 590, 600. Because defendant is indigent, as reflected by his representation by the Louisiana Appellate Project, we decline to exercise our authority to correct defendant’s illegally lenient | ^sentence with regard to the trial court’s failure to impose the mandatory fine. See State v. Pitt, 09-1054 (La.App. 5 Cir. 4/27/10), 40 So.3d 219, 224, writ denied, 10-1141 (La.12/10/10), 51 So.3d 725.
Finally, we note defendant was not advised of his multiple offender rights prior to the multiple bill hearing. A trial court is required to advise a defendant of the allegations contained in the multiple bill of information, his right to a hearing, and his right to remain silent. La. R.S. 15:529.1; State v. Haywood, 00-1584 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 582. The trial court’s failure to advise a defendant of his right to a trial and to remain silent is harmless when the defendant’s multiple offender status is established by competent evidence offered by the State at a hearing, rather than by the admission of the defendant. Id. at 582-83.
Defendant denied the allegations of the multiple bill, and the State presented competent evidence at the hearing to establish his multiple offender status. Therefore, the trial court’s failure to advise defendant of the specific allegations against him, his right to a hearing, and his right to remain silent was harmless error.

DECREE

For the foregoing reasons, defendant’s convictions for armed robbery and felon in possession of a firearm are affirmed. Additionally, his adjudication as a second felony offender is affirmed. Further, his enhanced sentence for armed robbery and his sentence for felon in possession of a firearm are affirmed.

AFFIRMED

. On September 15, 2009, the State amended the bill to delete the La. R.S. 14:64.3 charge.

. We note that defendant’s motion for appeal was premature, having been filed after sentencing on the underlying charge but before consideration of the multiple bill of information; however, this procedural defect was cured by the trial court’s imposition of sentence on the multiple bill. See State v. Balser, 96-443 (La.App. 5 Cir. 11/14/96), 694 So.2d 351, 354.

. The female driver, Lacie LeBeauf, was named as a co-defendant in the bill of information and ultimately charged with aggravated flight from an officer and accessory to armed robbery. She subsequently pled guilty to aggravated flight from an officer and accessory after the fact to armed robbery.

. Of note, the record shows through records from the Eastern Louisiana Mental Health System that defendant was started on Trazo-done.

. In his second assignment of error, defendant also asserted the trial court erred in denying his motion to quash the multiple offender bill; however, defendant did not brief this issue. As such, we consider any issues relating to the motion to quash to be abandoned. See Uniform Rules — Courts of Appeal, Rule 2-12.4; State v. Tranchant, 10-459 (La.App. 5 Cir. 11/23/10), 54 So.3d 730, 735, writ denied, 10-2821 (La.4/29/11), 62 So.3d 108.

. State v. Lynch, 441 So.2d 732, 734 (La.1983).