CHAISSON, J.
| defendant, Deneil Girod, appeals his convictions and sentences for attempted second degree murder, home invasion, and armed robbery with a firearm. In the brief filed on defendant’s behalf, appellate counsel challenges defendant’s total sentence of seventy years as excessive. Defendant additionally filed a pro se supplemental brief on his own behalf alleging that the evidence presented at trial was insufficient to support the guilty verdicts, that trial counsel rendered deficient performance and was ineffective, and that the State and the trial court lacked subject matter jurisdiction to prosecute and adjudicate the instant matter. For the reasons that follow, we find no merit to the arguments raised in either appellate counsel’s brief or defendant’s pro se supplemental brief. Accordingly, we affirm defendant’s convictions and sentences and remand the matter for the correction of an error patent as noted herein.

PROCEDURAL HISTORY

On November 6, 2014, the Jefferson Parish District Attorney filed a bill of information charging defendant with attempted second degree murder, in violation of La. R.S. 14:27 and La. R.S. 14:30.1 (count one); home invasion, in violation of La. R.S. 14:62.8(B)(3) (count two); and armed robbery with a firearm, in violation of La. R.S. 14:64 and La. R.S. 14:64.3 (count three). Defendant pled not guilty at his arraignment.
Trial commenced before a twelve-person jury on September 14, 2015. After considering the evidence presented, the jury, on September 15, 2015, found defendant guilty as charged on all counts. On September 22, 2015, the trial court sentenced defendant to forty-seven years in the Department of Corrections for the attempted second degree murder conviction (count one), twenty-five years for the home invasion conviction (count two), and forty-seven years for the armed robbery conviction (count three). Moreover, since the armed robbery was committed with |2a firearm, *1277 the trial court sentenced defendant to imprisonment for an additional five years pursuant to La. R.S. 14:64.3. The trial court ordered the entirety of defendant’s sentences on counts one and three and the first ten years of defendant’s sentence on count two to be served without benefit of probation, parole, or suspension of sentence. In addition, the trial court ordered that defendant’s sentences be served concurrently.
With regard to count three, the armed robbery charge, the State filed a bill of information seeking to have defendant adjudicated a multiple offender pursuant to the provisions of La. R.S. 15:529.1. After a hearing on January 28, 2016, the trial court found defendant to be a second felony offender, vacated its previously imposed sentence on count three, and resentenced defendant to sixty-five years in the Department of Corrections without benefit of probation, parole, or suspension of sentence. The trial court further maintained the separate, consecutive five-year term of imprisonment at hard labor without benefit of probation, parole, or suspension of sentence under the armed robbery firearm enhancement statute, La. R.S. 14:64.3. Defendant now appeals.[1]

FACTS

On December 28, 2013, at approximately 1:00 a.m., Mr. Dustin Adams and Ms. Kelly Lee were awakened by a loud noise in their Westwego residence. Thinking that a television had possibly fallen, Ms. Lee rushed out of bed to check on her eight-year-old daughter, whose bedroom was in the back of the house. When she exited her bedroom, Ms. Lee was confronted by two masked gunmen, one of whom yelled at her to “get down.” She complied and thereafter crawled to her daughter’s bedroom accompanied by one of the intruders. According to Mr. |3Adams, after Ms. Lee left their bedroom, she made a “frightening sound,” which alerted him to the fact that “something was wrong.” When Mr. Adams then got out of bed, the other gunman pointed a pistol at the back of his head, forced him to lie on the floor, and demanded his money and keys.[2] Mr. Adams pointed to his car keys, at which time this suspect retrieved them and exited the house through the front door.
After that intruder left, Mr. Adams ran to the back bedroom where the remaining perpetrator had Ms. Lee and her daughter at gunpoint. Mr. Adams charged towards the gunman, who fired a shot at him. Although the bullet grazed his head, Mr. Adams nonetheless physically attacked the armed suspect. Ms. Lee joined in the altercation to try to help Mr. Adams get the gun out of the perpetrator’s hand. As Ms. Lee tried to hold the gunman down, Mr. Adams ran to the kitchen, retrieved a knife, returned to the struggle, and stabbed the suspect. The altercation then moved from the bedroom, through the kitchen, and onto the back porch where Mr. Adams and the gunman continued to struggle. Ms. Lee followed, and as she passed through the kitchen, she grabbed a *1278 knife, went out the back door, and saw that the perpetrator had Mr. Adams pinned up against the side of a railing. Ms. Lee attacked and stabbed the suspect, which allowed Mr. Adams to break away from his hold. The perpetrator then jumped over the fence and fled the scene. Mr. Adams also jumped over the fence in an effort to get help from his neighbors. Ms. Lee went back inside to check on her daughter, told her to hide in a closet, and then called 9-1-1.
Detective Christopher Fisher and Officer Todd Usey with the Westwego Police Department arrived first on the scene. The two officers entered the residence from the rear of the house, saw blood in the kitchen, and encountered LMs. Lee, who appeared upset and was “hysterical.” Detective Fisher and Officer Usey immediately conducted a search of the house to make sure no one else was inside, and they found Ms. Lee’s young daughter, who was “visibly shaken,” hiding in a closet. The officers spoke to Mr. Adams[3] and Ms. Lee; however, the victims were unable to provide any identifying information about the gunmen,' whose facés were masked. Officer Usey also canvassed the neighborhood but did not locate any suspects that night.
Officer Robert Wallow and Officer-Grady Mason processed the crime scene on the night of the incident. The officers took photographs of the scene and recovered evidence, including two knives and a Taurus semi-automatic 9 mm handgun. , In addition, Officer Mason lifted numerous blood samples from the scene, including from the kitchen floor, an outdoor gate, and underneath the carport. These blood samples, as well as DNA reference samples obtained from the victims, were subr mitted to the Jefferson Parish Crime Lab for analysis. Detective Andre Cavalier, employed by the Westwego Police Department at the time of the incident, was notified by the crime lab that a sample of blood recovered from the scene matched that of defendant. Armed with this information, Detective Cavalier talked with the victims again to see if they knew defendant. After looking at defendant’s picture, Mr. Adams'identified him as “Deneil” and knew him because they went to the same mosque for worship.[4] Based on the blood analysis and the identification from Mr. Adams, Detective Cavalier obtained a warrant for defendant’s arrest.
Laura Oliver, a forensic DNA analyst with the Jefferson Parish Sheriffs Office DNA Laboratory, conducted the DNA analysis in this case and testified at trial as to the results. According to her analysis, the DNA profile from the swabs |fiof blood from underneath the carport, the gate at the rear of the carport, and one of the knives was consistent with the DNA profile obtained from the reference buccal swab of defendant. From the DNA profile from the other knife recovered from the scene, she concluded that it was consistent with a mixture of Ms. Lee’s and defendant’s DNA.

EXCESSIVE SENTENCE

On appeal, in his counseled assigned error, defendant contends that his total sentence of seventy years is excessive. Defendant was convicted of attempted second degree murder and was subject-to a sentencing range of imprisonment at hard *1279 labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence. See La. R.S. 1430.1(B); ' La. R.S. 14:27(D)(l)(a), For his home invasion conviction, defendant was subject to imprisonment at hard labor for not less than ten nor more than twenty-five years with at least ten years of the sentence to be served without benefit of parole, probation, or suspension of sentence. See La. R.S. 14:62.8(B)(3). With regard to his armed robbery with a firearm conviction, defendant faced a possible penalty of imprisonment at hard labor for not less than fifteen and not more than one hundred four years without benefit of parole, probation, or suspension of sentence. See La. R.S. 1434(B) and La. R.S. 14:64.3(A). The trial court sentenced defendant within the statutory ranges to concurrent sentences of forty-seven years for attempted second degree murder, twenty-five years for home invasion, and forty-seven years for armed robbery. The trial court imposed an additional five years, pursuant to La. R.S. 14:64,3, because a firearm was used-in the armed robbery.
Defendant was thereafter found to be a second felony offender on count three, and pursuant to La. R.S. 15:529.1, faced an enhanced sentencing range of forty-nine and one-half years to one hundred ninety-eight years imprisonment. Defendant was resentenced on count three to sixty-five years' imprisonment in the | (-.Department of Corrections without benefit of probation, parole, or suspension of sentence. The court further imposed a separate, consecutive five-year term of imprisonment at hard labor without benefit of probation, parole, or suspension of sentence under the armed robbery firearm enhancement statute, La. R.S. 14:64.3.
Defendant now contends that his overall sentence of seventy years is excessive.. While acknowledging that defendant’s acts were “horrendous,” appellate counsel points out that defendant’s convictions were the result of a “drug deal gone bad” and that defendant is a drug addict who needs treatment for his addiction, not excessive-incarceration. Defendant asserts that his sentence, which basically amounts to life in prison, serves no acceptable goal of punishment and is a waste of the State’s limited resources.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even when it is within the applicable statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. State v. Nguyen, 06-969 (La.App. 5 Cir. 4/24/07), 958 So.2d 61, 64, writ denied, 07-1161 (La.12/7/07), 969 So.2d 628. In reviewing a sentence for excessiveness, the appellate court must consider the punishment and -the crime in light of the harm to society and gauge whether the penalty is so disproportionate, as to shock the court’s sense of justice. The trial judge is afforded , wide discretion in determining sentences, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Berry, 08-151 (La.App. 5 Cir. 6/19/08), 989 So.2d 120, 131, writ denied, 08-1660 (La.4/3/09), 6 So.3d 767; La. C.Cr.P. art. 881.4(D). The relevant question on appeal is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. State v. Anderson, 09-934 (La.App. 5 Cir. 3/23/10), 38 So.3d 953, 962, writ denied, 10-908 (La.11/12/10), 49 So.3d 887.
. In the present case, we find that the-trial courtrdid not abuse its discretion in sentencing defendant ■ to a total sen *1280 tence of seventy years. When originally sentencing defendant, the trial court considered the sentencing guidelines, the severity of the offense, the victim impact statements, defendant’s criminal history, and the letters submitted by community members on defendant’s behalf. As did the trial court, we specifically note the severity of the offenses. Defendant, accompanied by another individual, broke into the home of the victims in the middle of the night while they were asleep, held three people at gunpoint, including an eight-year-old child, and fired a shot that grazed Mr. Adams’ head. The child was terrified, and as stated in the victim impact letter, she still suffers from nightmares of someone shooting her and has been robbed of a normal childhood. We further note defendant’s criminal history, which according to the State, includes convictions for battery of a police officer and several narcotics offenses. Additionally, defendant’s sentencing exposure was substantially greater than the total sentence that he actually received, and the trial court ordered his sentences to run concurrently, with the exception of the additional five-year penalty imposed pursuant to the armed robbery firearm enhancement statute.
Accordingly, given these factors, we find that defendant’s total sentence of seventy years is not excessive and that the trial court did not abuse its discretion in imposing such a sentence. We also note that a review of case law supports the sentence imposed. For example, in State v. Fuller, 07-319 (La.App. 5 Cir. 2/19/08), 980 So.2d 45, writ denied, 08-705 (La.10/10/08), 993 So.2d 1282, the defendant, found to be a second felony offender, also argued that his enhanced sentence of one hundred ninety-eight years and his consecutive five-year sentence under La. R.S. 14:64.3 constituted an excessive sentence. In finding the ^defendant’s sentence of two hundred three years not excessive, this Court noted that the defendant had numerous prior felonies and had pointed a gun at the victim’s head and threatened to kill him.
Based on the foregoing, the arguments raised by defendant in this assigned error are without merit.

SUFFICIENCY OF THE EVIDENCE

In his first pro se assigned error, defendant challenges the sufficiency of the evidence used to convict him of attempted -second degree murder, home invasion, and armed robbery with a firearm.
In reviewing the sufficiency of the evidence, an appellate court must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mickel, 09-953 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885. A review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Rather, a reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found the State proved the essential elements of the crime beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
In challenging the sufficiency of the evidence, defendant sets forth several arguments. First, he contends that the victims’ testimony was not consistent or “aligned with the factual basis of events which led to conviction in the instant matter.” He focuses this argument on the *1281 credibility of the witnesses and the lack |gof evidence establishing his identity as the perpetrator of the offenses.[5] With regard to the lack of evidence establishing his identity as the perpetrator,, defendant points out that no DNA samples from Ms. Lee’s nails were processed despite her claim that she tried to claw the perpetrator’s eyes out. Additionally, defendant sets forth that the bedspread that he allegedly fell onto during the altercation with the victims and the gun that he allegedly dropped were not processed for identification evidence. Although these particular items may not have been analyzed, DNA evidence was produced that' linked defendant to the scene.
In State v. Wiley, 10-811 (La.App. 5 Cir. 4/26/11), 68 So.3d 588, 591, writ denied, 11-1263 (La.3/30/12), 85 So.3d 106, this Court found the evidence was sufficient to convict the defendant as a principal to second degree murder when the most important piece of evidence was a piece of chewing gum that contained the defén-dant’s fingerprints and DNA. The conviction stemmed from a shooting which occurred during a burglary perpetrated by several individuals. This Court found that the State did not prove that the defendant fired the gun that killed.the victim, but did find that the State proved beyond a reasonable doubt that the defendant was a principal to second degree murder. In reaching this conclusion, this Court relied on the fact that the defendant’s fingerprint and DNA were found at the scene of the crime.
Likewise, in the present" case, the trier of fact had to rely on the DNA analysis to establish defendant’s connection- to the crimes. The victims were unable to identify either of the perpetrators because they were masked. At trial, Mr. Adams and Ms. Lee testified .about the circumstances surrounding the incident and recounted that they got into a physical altercation with one of the subjects and stabbed him several times with a knife. The victims further testified that the 11(laltercation moved from the bedroom, through the kitchen, and out the back door. Blood samples, as well as the two knives, were recovered from the scene of the incident. Some of these samples were analyzed and found to be consistent with the DNA profile of defendant. Laura Oliver conducted the DNA testing and testified at trial as to the results. According to Ms. Oliver, the DNA profile from the swabs of blood from underneath the carport, the gate at the rear of the carport, and one of the knives found inside the house was consistent with, the DNA profile obtained from the reference buccal swab of defendant. From the DNA profile from the other knife recovered from the scene, she concluded that it was consistent with a mixture of Ms. Lee’s and defendant’s DNA. Accordingly, the evidence presented at trial was sufficient to establish defendant’s identity as the perpetrator.
With regard to inconsistencies in the testimony, defendant points out that iii Ms. Lee’s 9 — 1—1 call/ she clainied that there were three perpetrators, whereas at trial she testified that there were two intruders. Further, defendant contends that the testimony of the victims indicated that the perpetrator had been stabbed several times resulting in serious wounds; however, defendant had no wounds or scars that *1282 were consistent with the type of 'attack described by the victims.
While defendant, attacks the credibility and believability of the victims’ testimony regarding ’ the events of that night,.it is well settled that the trier of fact shall evaluate" the' witnesses’ credibility, and when-faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law. State v. Jones, 985 So.2d at 240, In- the present case, the jury obviously afforded more credibility ' to the evidence that showed defendant’s culpability in' the instant offenses. Viewing the Inevidence presented in the light most favorable to the prosecution, we find that there is sufficient evidence to support the jury’s credibility determinations.
In his next argument attacking the sufficiency of the evidence used to convict him, defendant asserts that the DNA evidence was possibly tainted or contaminated, thereby rendering it useless. In setting forth this argument, defendant references that it was raining that night, the blood found . on one. of the steak knives was “mixed” thereby raising, questions.about the sample’s handling and collection, and DNA evidence, through blood samples was not found on several places where it should have been found according to the victims’ testimony about the incident. Defendant’s claim that the DNA evidence was possibly tainted is speculative and lacks factual support, Moreover, even if it was raining .outside, DNA evidence was also recovered from inside the house.
Lastly, defendant' argues that the essential elements of armed robbery were not proven beyond a reasonable doubt. La.R.S. 14:64 defines armed robbery as “the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force - or intimidation, while armed with a dangerous weapon.” Defendant specifically contends that the State did not present evidence demonstrating that he demanded or took anything of value while armed with a dangerous weapon. Although defendant did not personally take anything from the victims during the armed robbery, a person need not hold the weapon or perform the taking to be guilty of armed robbery under the law of principals. State v. Butler, 07-1034 (La.App. 5 Cir. 10/28/08), 997 So.2d 631, 637, writ denied, 09-212 (La.10/30/09), 21 So.3d 276.
Pursuant to La. R.S. 14:24, “[a]ll persons concerned in the commission of a crime, whether present or absent, ánd whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.” Only those 1 ^persons who knowingly participate in the planning or execution of a crime are principals to that crime. An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state, and the mental state of one defendant may not be imputed to another defendant. Thus, mere presence at the scene of a crime does not make one a principal to the crime. However, it is sufficient encouragement that the accomplice is standing by at the scene of the crime ready to give some aid if needed, although in such a case it is necessary that the principal actually be aware of the accomplice’s intention. State v. Petty, 12-278 (La.App. 5 Cir. 10/30/12), 103 So.3d 616, 623.
*1283 At trial, the evidence established that defendant- aided the other suspect by holding Ms. Lee and her daughter at gunpoint in the child’s bedroom while the other suspect demanded and ultimately took Mr. Adams’ car keys. Thus, contrary to defendant’s claim, we find that even though defendant did not personally take the car keys, the evidence was sufficient to sustain his conviction as a principal to armed robbery..
Defendant also complains because he was not specifically found guilty or charged under the law of principals. The Louisiana Supreme Court has held that there is absolutely no requirement that an indictment explicitly denominate the accused as a “principal.” That the accused is indictéd for the offense itself, and not charged as an accessory after the fact, irrefutably evidences that he is charged as a principal. State v. Peterson, 290 So.2d 307, 308 (La.1974). Further, the record reflects that the jury was instructed on the law of principals.
Accordingly, based on the foregoing reasons, we find no merit to the arguments presented by defendant relating to the sufficiency of the evidence used to convict him.

\ INEFFECTIVE ASSISTANCE ÓF COUNSEL

In his second ‘pro se assigned error, defendant raises allegations of ineffective assistance of trial counsel. Specifically, he contends that counsel was ineffective for failing to impeach or discredit certain witnesses, for steering his defense toward “a drug deal gone bad,” for stating to the jury that defendant had previously been in prison, and for refusing to allow him to testify on his own behalf.
Generally, an ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the district court, where a full evidentiary hearing can be conducted, rather than by direct appeal. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised in an assignment of error on appeal, it may be addressed in the interest of judicial economy. , State v. Jones, 13-99 (La.App. 5 Cir. 8/27/13), 123 So.3d 758, 765.
In the -present case, all of the claims raised by defendant potentially involve the issue of counsel’s trial strategy. This Court has held that ineffectiveness of counsel, relating to trial strategy, cannot be determined by review of the record on appeal, but rather such a claim must be asserted by application for post-conviction relief where the issue can be considered through ¿n evidentiary .hearing to determine, among other things, the defense strategy and whether the defendant himself was aware of the strategy and acquiesced in it. State v. Haynes, 09-109 (La.App. 5 Cir. 2/9/10), 34 So.3d 325, 334, writ denied, 10-493 (La.9/24/10), 45 So.3d 1073. Accordingly, we find that defendant’s ineffectiveness claims are more appropriately relegated to post-conviction relief where- the issue can be considered in an evidentiary hearing if necessary.[6]

J^LACK OF SUBJECT MATTER JURISDICTION

In his third pro se assigned error, defendant argues that the trial court lacked subject matter jurisdiction to adjudicate the claims against defendant. He asserts *1284 that since the State is not a party to the controversy, it does not have standing to bring any claims against defendant, and therefore, the trial court lacks jurisdiction to hear the claims against defendant.
Under the Louisiana Constitution, a district court has original jurisdiction of all criminal matters and exclusive original jurisdiction of felony cases. See La. Const, art. V, § 16(A). La. C.Cr.P. art. 16 provides that courts have the jurisdiction and powers over criminal proceedings that are conferred upon them by the constitution and statutes of this State.
Further, under La. C.Cr.P. art. 61, the district attorney has entire charge and control of each criminal prosecution in his district, and he decides whom, when, and how to prosecute. For example, the district attorney has the sole discretion to choose under which law he will prosecute. State v. Boss, 03-133 (La.App. 5 Cir. 5/28/03), 848 So.2d 75, 77, wrii denied, 03-1968 (La.5/14/04), 872 So.2d 508.
Thus, as the Louisiana Constitution is the basis for the district court’s jurisdiction over criminal felony proceedings, and the district attorney is the proper party to prosecute criminal cases, defendant’s arguments relating to lack of subject matter jurisdiction are without merit.

ERRORS PATENT REVIEW

In his supplemental brief, defendant also requests that the record be reviewed for errors patent pursuant to La. C.Cr.P. art. 920. He further directs this Court to a possible sentencing error. In particular, he claims that the trial court erred in restricting his parole eligibility on his enhanced sentence because La. R.S. 15:529.1 does not restrict parole eligibility.
|1fiLa. R.S. 15:529.1(G) requires that all habitual offender sentences be served without benefit of probation or suspension of sentence. While defendant is correct that the habitual offender statute does not restrict parole, the restrictions on parole eligibility imposed on habitual offender sentences under La. R.S. 15:529.1 “are those called for in the reference statute.” State v. Esteen, 01-879 (La.App. 5 Cir. 5/15/02), 821 So.2d 60, 79 n. 24, writ denied, 02-1540 (La.12/13/02), 831 So.2d 983. In the present matter, the underlying offense of armed robbery with a firearm provides that the sentence be served without benefit of parole, probation, or suspension of sentence. See La. R.S. 14:64. Because the underlying offense carries a parole restriction, the habitual offender sentence is to likewise be imposed without parole. See State v. Smith, 09-100 (La.App. 5 Cir. 8/25/09), 20 So.3d 501, 509, writ denied, 09-2102 (La.4/5/10), 31 So.3d 357. Therefore, the trial court did not err in restricting parole eligibility on defendant’s enhanced sentence.
We do however note an error that requires correction. The uniform commitment order following defendant’s resen-tencing under La. R.S. 15:529.1 is inconsistent with the sentence imposed by the trial court as reflected in the transcript. Specifically, the transcript reflects that on count three, the trial court sentenced defendant as a second felony offender to imprisonment for sixty-five years without benefit of parole, probation, or suspension of sentence. The transcript shows that the trial court thereafter specified that the additional five-year penalty imposed pursuant to La. R.S. 14:64.3 would be maintained. However, the uniform commitment order reflects that the trial judge sentenced defendant on count three to seventy years of imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. The order fails to indicate that any portion of the sentence was imposed pursuant to La. R.S. 14:64.3 *1285 or that the separate five-year sentence was to run consecutively.
11frIn accordance with established procedure, we remand this case to the district court with instructions to amend the uniform commitment order to accurately reflect the sentence imposed by the trial court as stated in the transcript. We further instruct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected uniform commitment order to the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections’ Legal Department. See La. C.Cr.P. art. 892(B)(2); State v. Lyons, 13-564 (La.App. 5 Cir. 1/31/14), 134 So.3d 36, 41, writ denied, 14-481 (La.11/7/14), 152 So.3d 170.
Accordingly, for the reasons set forth herein, defendant’s convictions and sentences are affirmed, and the matter is remanded for correction of an error patent as noted herein.

CONVICTIONS AND SENTENCES AFFIRMED; REMANDED WITH INSTRUCTIONS.

. Defendant’s motion for appeal was prematurely filed, as it was filed and granted after defendant was originally sentenced but prior to his adjudication as a second felony offender. However, this procedural defect was cured by the subsequent resentencing of defendant as a multiple offender, which the trial court retained jurisdiction to do under La. C.Cr.P. art. 916. See State v. Pollard, 12-346 (La.App. 5 Cir. 12/18/12), 106 So.3d 1194, 1197 n. 2, writ denied, 13-140 (La. 6/21/13), 118 So.3d 408.

. At the time, Mr, Adams had three cars at his house: a red, custom Cutlass, a gold Caprice, and a rental car. Although the perpetrator took all the keys, none of the cars were actually taken.

. Although Mr. Adams was not at the scene upon the officers’ initial arrival, he was discovered by police in the neighborhood and brought back to his house, at which time he - spoke with the investigating officers.

. It was later learned that Mr. Adams also knew defendant because they served time in prison together.

. In addition to proving the statutory elements of the charged offense at trial, the State is required to prove the defendant’s identity as the perpetrator. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Ray, 12-684 (La.App. 5 Cir. 4/10/13), 115 So.3d 17, 20, writ denied, 13-1115 (La.10/25/13), 124 So.3d 1096.

. The defendant would have to-satisfy the requirements of La. C.Cr.P. art. 924, et seq., in order to receive such a hearing.