996 So.2d 1151 (2008)
STATE of Louisiana
v.
William JOHNSON.
No. 08-KA-268.
Court of Appeal of Louisiana, Fifth Circuit.
October 28, 2008.
*1152 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Juliet Clark, Michael Smith, Vincent Paciera, Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, State of Louisiana, Gretna, LA, for Plaintiff/Appellee.
Bruce G. Whittaker, Attorney at Law, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, FREDERICKA HOMBERG WICKER, and GREG G. GUIDRY.
MARION F. EDWARDS, Judge.
Defendant-appellant, William Johnson ("defendant"), appeals his conviction and sentence on a charge of possession of cocaine in violation of LSA-R.S. 40:967(C). Defendant filed a Motion to Suppress the Evidence, which was denied by the trial court. On July 19, 2007, defendant was tried by a jury and found guilty of the charge. Sentencing was set for August 1, 2007. On that date, defendant filed a Motion for New Trial and Reconsideration of Suppression of Evidence Ruling. After that motion was denied, defendant waived delays and was sentenced to serve five years at hard labor, to run consecutively with any other sentence defendant was serving. Defendant filed a Motion for Appeal, which was granted by the trial court.
Subsequently, the State filed a bill of information alleging that defendant was a multiple offender. After a hearing on the matter, the court found defendant to be a third felony offender. The trial court vacated the original sentence and sentenced the defendant to a term of ten years at *1153 hard labor under LSA-R.S. 15:529.1. Defendant timely filed a second Motion for Appeal, which was granted.
On appeal, defendant asserts that the trial court erred in denying the motion to suppress the evidence. The basis of defendant's argument is that there was no consent to search the hotel room that defendant and a friend were occupying when officers made the arrest. Consequently, the drugs found as a result of the search should have been suppressed. Defendant also asks this Court to conduct an errors patent review. The issue argued with regard to the Motion to Suppress relates to consent to search.
Although not required to do so, an appellate court may review the testimony adduced at trial, in addition to the testimony adduced at the suppression hearing, in determining the correctness of the trial court's pre-trial ruling on a motion to suppress.[1] Accordingly, we have reviewed the testimony and evidence presented to the trial court in both the hearing on the motion to suppress and the trial on the merits.

FACTS
At about 7:00 p.m. on March 22, 2007, Detective Wayne Williams ("Detective Williams"), who was part of a joint narcotics task force that included officers from the Gretna Police Department and the Jefferson Parish Sheriff's Office, received information from a reliable informant that a man named "Will" was selling crack cocaine out of Room 32 at the Budget Inn, a hotel at 5240 Alice Street. However, "Will" would not sell cocaine to the informant because he did not trust him. Detective Williams stated that he did not attempt to get a search warrant for the room because a judge was unlikely to issue a search warrant in a situation such as this without an undercover buy.
Detective Williams involved Agent William Meetze ("Agent Meetze") and Officer Brian Rico ("Officer Rico"), both members of the task force team, in the investigation. All were dressed in black fatigues and a ballistics vest with the word "police" inscribed on the front and back. Although Detective Williams conducted surveillance on the hotel room for about one hour, he did not witness any illegal activity.
Detective Williams and the other task force officers decided to approach the hotel room at about 10:00 p.m. Detective Williams knocked on the door of the room, and defendant opened it three-quarters of the way. Detective Williams identified himself as a police officer, and defendant gave his verbal consent for the officer to enter. When Detective Williams stepped into the room, defendant stepped back from the doorway and gestured for the detective to enter. As the detective began to enter the room, he saw defendant glance to his left. When the detective looked in that direction, he saw what he recognized as a crack pipe and several small pieces of crack cocaine in plain view on a table. Defendant tried to close the door, but the officers held the door open.
Detective Williams also testified that the defendant was wearing jeans shorts and a shirt and that a pat down search revealed more crack cocaine in defendant's pocket. Defendant and a female companion were arrested.
Agent Meetze of the Jefferson Parish Sheriff's Office testified at trial that he was standing behind Detective Williams and Officer Rico when Detective Williams knocked on the hotel room door. When the door opened, Detective Williams stood *1154 in the doorway and said, "[P]olice, you mind if we come in and talk to you[?]" Agent Meetze saw Detective Williams begin to enter the room but could not see who opened the door or hear what was said. Agent Meetze testified that, as Detective Williams entered the room, the subject tried to close the door. A struggle ensued.
Once he entered the room, Agent Meetze saw that the person who had answered the door was the defendant. A woman was sitting on the bed. The officers arrested both subjects. Agent Meetze testified that the officers seized some small pieces of crack cocaine and a crack pipe that were lying on a table. More crack cocaine was seized from defendant's pocket.
Agent Meetze explained that there was nothing unusual about how he and the other officers proceeded in this case. The "knock and talk" technique that was used by the officers in this case is a common investigative tool used by narcotics agents in investigating complaints of drug activity. The procedure involves an officer knocking on the subject's door and asking whether he or she would mind answering some questions. Many of the complaints Agent Meetze has handled in this manner have turned out to be frivolous, but such complaints must be investigated.
Officer Rico of the Gretna Police Department testified at trial that he was standing behind Detective Williams when Detective Williams performed the knock and talk at the door of Room 32. When defendant opened the door, Detective Williams said, "Gretna Police," and asked defendant if he could step inside and speak with him for a moment. Officer Rico could not see inside the room from his position but heard defendant say, "[Y]es, come on in." Detective Williams stepped into the room, and defendant attempted to close the door.
Defendant testified at the hearing on the Motion to Suppress. His version of the events differs from that of the officers. Defendant stated he had rented room 32 at the Budget Inn for six months prior to his arrest. When the police officers arrived, defendant and his girlfriend, Leslie Calhoun, were preparing to take a bath. Defendant was naked, and Ms. Calhoun was wearing a nightgown. Defendant denied that the officers knocked on the door of the hotel room. He testified that he saw the door to the room open slightly. He had propped a chair against the door, and it kept the door from being opened further. The officers forced the door open. Defendant said that, since his door had been locked, he assumed the officers either "jimmied" the lock or obtained a key from the hotel's management. Defendant testified he did not invite the officers into his room, and there was no cocaine in the room. Moreover, the officers did not find cocaine in his pants pocket, since he was not dressed. Defendant testified that one of the police officers threw him a pair of shorts to wear. The officer then picked up something from the floor and said, "Oh, I got cocaine." Defendant admitted he had prior felony convictions for possession of cocaine and receiving stolen things.
Defendant called Officer Arthur Morvant and Stephanie Mule as trial witnesses. Officer Morvant testified that the only part he played in the investigation was to accompany the two suspects to the vehicle that transported them from the scene. His testimony did not shed any light on the consent question.
Stephanie Mule testified that, when Detective Williams knocked on the door, defendant opened the door and Detective Williams announced himself and asked to enter the room. A few seconds later, defendant started to close the door.
*1155 At the conclusion of the motion hearing testimony, the trial judge denied defendant's motion to suppress evidence based "on credibility."

LAW
Unless justified by one of the narrowly drawn exceptions to the Fourth Amendment's warrant requirement, a warrantless search is per se unreasonable.[2] In a hearing on a motion to suppress, the State bears the burden of proving that such an exception applies.[3]
The defendant argues the seizure of crack cocaine from his hotel room and his person was illegal because the police officers did not have a warrant to search the premises, nor did they have his consent to enter the room. Defendant further argues that, even if he initially consented to the officers' entry, he revoked that consent.
The State responds that defendant gave his consent to the officers' entry, and once the officers had that consent, they saw the contraband in plain view. The remaining cocaine was legally seized from defendant's pocket during a search incident to a valid arrest.
Thus, the exception to the warrantless search claimed by the State is consent. Consent to search is one of the recognized exceptions to the warrant requirement, where the consent is freely and voluntarily given by a person who possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected.[4] Consent may be given orally or in writing.[5] The State has the burden of proving the consent was given freely and voluntarily when it relies on consent to justify a warrantless search.[6] Voluntariness is a question of fact to be determined by the trier-of-fact under the totality of the circumstances.[7]
Defendant does not argue that the officers were not authorized to perform a "knock and talk" at his door. In any case, the officers did not act improperly in going to defendant's room and knocking on the door based on the informant's tip. Police officers have the same right to knock on a door as any other member of the general public.[8] Knocking on a door does not constitute an investigatory stop and does not require reasonable suspicion.[9]
The question of consent in this case comes down to the credibility of the witnesses. Detective Williams testified during the motion hearing that he obtained defendant's "verbal consent" to enter the room. Moreover, during the trial testimony he gave subsequent to the motion hearing, Detective Williams stated defendant stepped back from the doorway and motioned for him to enter. Detective Williams' testimony was supported by the trial testimony of the other officers, especially that of Officer Rico.
*1156 The credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier-of-fact, who may accept or reject in whole or in part the testimony of any witness.[10] It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier-of-fact or to reweigh the evidence absent impingement on the fundamental due process of law.[11]
It is clear that the trial judge found the officers more credible than defendant. We find no error in the finding of fact by the trial court, that defendant gave consent for police officers to enter the room.
Consent can be limited in time, duration, area, and intensity, and it may be revoked at any time, even after the search has begun. Whether a search is authorized by warrant or by consent, the scope of the search is limited by the terms of its authorization.[12] Defendant maintains that, even if he gave oral consent to the officers' entry, he immediately revoked that consent. Therefore, defendant argues, the officers' seizure of the cocaine was invalid. Once voluntary consent to search is given, it continues until it is revoked or withdrawn.[13] Even if defendant withdrew his consent when he attempted to close the door on the officers, he did so after Detective Williams had lawfully seen the cocaine and crack pipe in plain view on the table. Thus, defendant revoked his consent too late to affect the validity of the seizure.
Because Detective Williams had defendant's consent to step inside the doorway, the officer had the authority to seize the contraband in plain view on the table. Under the plain view doctrine, if police officers are lawfully in a position from which they view an object that has an incriminating nature which is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.[14]
The Fourth Amendment permits a warrantless search or seizure incident to a constitutionally valid custodial arrest.[15] Upon seizing the contraband from the table, the officers had probable cause to arrest defendant and conduct a search incident to arrest. Therefore, they lawfully seized the crack cocaine from defendant's pocket.
The trial court's ruling on a motion to suppress is afforded great weight and will not be overturned unless it is clearly erroneous.[16] Under the circumstances of this case, we cannot find the trial judge abused his discretion in denying defendant's motion to suppress evidence. This assignment of error is without merit.
The defendant requests an error patent review. This Court routinely reviews the record for errors patent, regardless of whether the defendant makes such a request.[17] The review reveals no patent errors that require corrective action.
*1157 For the foregoing reasons the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] State v. Leger, XXXX-XXXX (La.7/10/06), 936 So.2d 108, 122, cert. denied, Leger v. Louisiana, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007)
[2] Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973).
[3] LSA-C.Cr.P. art.703(D); State v. Addison, 05-378 (La.App. 5 Cir. 12/27/05), 920 So.2d 884, 890, writ denied, 06-1087 (La.11/9/06), 941 So.2d 36.
[4] United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974).
[5] State v. Ossey, 446 So.2d 280, 287 (La. 1984), cert. denied, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984); State v. Gomez, 06-417 (La.App. 5 Cir. 11/28/06), 947 So.2d 81, 86.
[6] Id.
[7] Id.
[8] State v. Oliver, (La.App. 5 Cir.1984), 448 So.2d 156.
[9] State v. Sanders, 374 So.2d 1186, 1188 (La. 1979); State v. Haywood, 00-1584 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 574-75.
[10] State v. Doussan, 05-586 (La.App. 5 Cir. 2/14/06), 924 So.2d 333, 343, writ denied, 06-0608 (La. 10/13/06), 939 So.2d 372.
[11] Id.
[12] Walter v. United States, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980).
[13] State v. Triplet, 42,357 (La.App. 2 Cir. 8/15/07), 962 So.2d 506, 510, writ denied, 07-2030 (La.2/15/08), 976 So.2d 175.
[14] State v. Nicholas, 06-903 (La.App. 5 Cir. 4/24/07), 958 So.2d 682, 689.
[15] State v. Sherman, 05-0779 (La.4/4/06), 931 So.2d 286, 295.
[16] State v. Cambre, 04-1317 (La.App. 5 Cir. 4/26/05), 902 So.2d 473, 482, writ denied, 05-1325 (La. 1/9/06), 918 So.2d 1039.
[17] LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990).